*277 OPINION.
Black:
The amount of the capital gain which the Commissioner computed on the sales of the securities in question is not in dispute. If petitioner is taxable at all on the gain from the sales in question, then she concedes that the amount of the capital gain which the Commissioner has computed is correct. Petitioner contends, however, that she was not the owner of the securities in question at the time they were sold; that prior to the date of sale she had loaned them to the Clinton Distilleries Corporation of Delaware, with full power and authority to sell them for its own account; that the sales were made at its instance and for its benefit and not for hers, and that she is- not taxable on any of the gain from the sales.
*278 The respondent disputes these contentions of petitioner. In his deficiency notice he stated with reference to this particular transaction as follows:
Your contention that the said stock had previously been loaned to Clinton Distilleries Corporation (a Delaware corporation) under an agreement to return the identical stock has not been substantiated. For this reason, your further contention, that the profit from the above sale is not taxable to you cannot be conceded.
The respondent takes the same position in his brief. As to the issue thus raised, we think petitioner must be sustained on authority of Fremont C. Peck et al., Executors, 31 B. T. A. 87, and Frank Kell, 31 B. T. A. 212. The written agreement between petitioner and Delaware dated December 6,1935, shows clearly that petitioner loaned the securities in question to Delaware and gave it the right to sell and dispose of them, and use the money thus obtained for its own benefit. Delaware obligated itself to repay the securities in kind, on or before June 10,1936.
True, the securities were loaned by petitioner to Delaware subject to the prior rights of the bank, which held them as collateral security for a note which represented money that the bank had loaned petitioner to use for Delaware’s benefit. We think this makes no difference as to the validity of the transaction. The fact that securities are up as collateral with a bank does not deprive their owner of the right to dispose of them, subject of course to the prior rights of the bank.
In Carleton H. Palmer, 40 B. T. A. 1002, we held that the execution of the trust agreement therein involved effectively passed title to the trustee of certain shares of stock without manual delivery, despite the fact that the stock transferred in trust remained registered in the set-tlor’s name and pledged as collateral security for certain loans. We held that dividends on the stock which were paid subsequent to the transfer were taxable to the trust and not to the settlor. At page 1008 of that opinion we cited numerous authorities in support of our holding.
Respondent in his brief lays much stress on the fact that before-the bank would deliver the securities to Bache & Co. for sale or before Bache & Co. would sell them, they required petitioner to sign an order directing the sale of the securities. We see nothing unusual about that procedure. The' securities, although clearly loaned by petitioner to Delaware, were subject to the prior rights of the bank and still stood in the name of petitioner. Naturally the bank was not going to release them for sale except upon the written order of petitioner. The testimony shows that the bank, after applying the proceeds of the sales to the payment of the indebtedness to it, turned the balance over to petitioner, and peti *279 tioner promptly endorsed the checks and delivered them to Delaware, which used the money for its own benefit. Delaware has never repaid to petitioner either the money or the stock.
On the authority of Fremont C. Pede et al., Executors, supra, and FranTe Kell, supra, we sustain petitioner on this issue.

Decision will be entered under Bule 50.